NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0290n.06

No. 20-1985

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jun 15, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SHELLY COOK; CHRISTINA GIBBARD, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GREENLEAF TOWNSHIP, MICHIGAN; | ) | MICHIGAN |
| JUDY KELLER; RANDALL SCHUETTE; | ) | |
| KEN BROWN; ROSIE QUINN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: ROGERS, WHITE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. The district court required a rural township's officials to pay over $137,000 in attorney's fees after Christina Gibbard won a mere $500 on claims under Michigan's Open Meetings Act. The officials now challenge this attorney's fees award, arguing both that it includes fees for work unrelated to the Open Meetings Act and that it is clearly excessive as compared to Gibbard's limited success in this suit. On appeal, however, these township officials simply assert that the attorney's fees *must* have included unrelated work without challenging any specific billing entry or citing any supporting facts. Their conclusory argument does not suffice under our deferential clear-error standard of review. And while the fees may be gargantuan in relation to the small amount that Gibbard recovered, the Open Meetings Act itself caps a plaintiff's damages at $500. So the statute requires courts to grant an award of "actual" (not

"reasonable") attorney's fees in order to ensure that attorneys will accept these types of cases despite the small potential recovery. We thus must affirm the award.

I

This case stems from a contentious township board meeting in Greenleaf Township, Michigan. For years Christina Gibbard and Shelly Cook attended nearly every board meeting. On October 18, 2016, the board held a special meeting to consider settling a suit by the township's former supervisor. State law required a majority of the board to authorize this meeting in writing. Gibbard questioned the township clerk, Judy Keller, about whether a majority had done so.

After the meeting, Keller told Gibbard to accompany her to her office purportedly to retrieve a document showing that the board had properly called the meeting. When they got there, Keller started berating Gibbard instead. Gibbard began recording her. The recording showed Keller get close to Gibbard at one point; Gibbard alleged that Keller made physical contact. Gibbard decided to leave without the document. As she left, the township treasurer sought to forcibly turn off her camera. Keller also noticed that Gibbard had been recording her. She ran toward Gibbard to grab the camera. Gibbard thought that Keller was going to tackle her, but a man stepped between them.

Hearing the ruckus, Cook arrived on the scene in time to see Keller rushing Gibbard. Cook claims to have watched Keller's husband then grab Gibbard's hand to pry away her camera. Cook began to record the encounter too. As Keller's husband confronted Gibbard, Keller quickly approached Cook, told her to "shut that damn camera off," and tried to slap it away.

Gibbard and Cook sued Greenleaf Township, several township officials (Keller, Randall Schuette, Ken Brown, and Rosie Quinn), and Keller's husband. Gibbard and Cook brought federal claims under 42 U.S.C. § 1983 against the township officials, alleging that their actions violated

the First Amendment. Gibbard and Cook also brought various state-law claims. They alleged, among other things, that Keller and her husband had committed both a common-law assault and a common-law battery. They also alleged that Keller and Schuette had violated Michigan's Open Meetings Act.

Several of the claims survived summary judgment, so the case proceeded to trial. The jury delivered a mixed verdict. It rejected Gibbard's and Cook's federal constitutional claims and their common-law assault claims. It also rejected Cook's claims under the Open Meetings Act. Yet the jury found for Gibbard on her Open Meetings Act claims against Keller and Schuette and awarded her $250 in damages from each defendant. It also found in favor of Gibbard and Cook on their battery claims against Keller and her husband. It awarded Gibbard $750 in damages and Cook $1,000 in damages from each of these two defendants.

The Open Meetings Act allowed Gibbard to recover her attorney's fees from Keller and Schuette. She initially sought $142,695.50. The district court partially granted her motion. It rejected Keller and Schuette's argument that the attorney's fees had to be proportional to the $500 in damages that Gibbard recovered, holding that her attorneys were entitled to full payment under Michigan law. But the court recognized that the attorneys could seek to recover only for the time spent on Gibbard's successful Open Meetings Act claims, not for time on unrelated claims. It ordered the parties to confer in the hope that they would reach an agreement on the fees that were unrelated to Gibbard's Open Meetings Act claims.

The parties could not agree. Gibbard renewed her fees motion. Although subtracting about 30 hours of work as unrelated to her Open Meetings Act claims, Gibbard now sought payment for the time spent on this attorney's fees dispute. She thus requested even more: $143,799.50. Keller and Schuette's response did not challenge any specific billing entry. The district court gave them

a second chance to raise such a challenge by ordering supplemental briefing and allowing them to request an evidentiary hearing. Keller and Schuette's supplemental brief switched tactics by objecting to nearly every billing line on the same grounds: that they were either vague or related to more than Gibbard's Open Meetings Act claims. Gibbard replied with declarations from her attorneys asserting that they spent nearly all of their time on the "common core of facts" relating to all claims, including the Open Meetings Act claims. The parties waived the proposed evidentiary hearing.

The district court granted Gibbard's renewed motion in part. It held that Gibbard could not seek payment for the time spent on the attorney's fees dispute because the defects in Gibbard's original motion had caused the dispute. But it held that all of Cook's and Gibbard's claims were "directly related" to the same confrontation after the October 18 board meeting. Op., R.121, PageID#2921. So it found that "virtually all of the time devoted to the matter" related to Gibbard's Open Meetings Act claims. *Id.* The court awarded Gibbard $137,724.50 in fees. The township defendants appeal this award.

II

A

Under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts generally must follow state substantive law and federal procedural law when resolving state claims falling within their jurisdiction. *See, e.g.*, *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 532 (6th Cir. 2008); *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 332–35 (7th Cir. 1994). The courts have recognized two types of attorney's fees awards under this dichotomy. *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279–80 (10th Cir. 2011). When a state legislature allows a party to seek attorney's fees as part of the recovery on a successful state-law claim, federal courts view this legislative

"policy" choice as substantive and so applicable in federal court. *See Degussa*, 277 F. App'x at 532 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991)). Conversely, courts treat an award of attorney's fees for bad-faith litigating conduct as "procedural" and so governed by federal standards. *See Gen. Elec. Co. v. Latin Am. Imports, S.A.*, 127 F. App'x 157, 159 (6th Cir. 2005) (citing *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 528 (6th Cir. 2002)). In this case, Keller and Schuette do not dispute that Michigan's Open Meetings Act applies in federal court because it authorizes "substantive" fees tied to a winning claim. The Act provides: "A public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." Mich. Comp. Laws § 15.273(1).

We generally look to state-court decisions for guidance on the substantive elements of a state-law claim. *See Germain v. Teva Pharms. (In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.)*, 756 F.3d 917, 937 (6th Cir. 2014). We thus look to state-court decisions for guidance on the substantive standards that govern a fee award under this Michigan statute. Unlike some statutes that give courts discretion to grant "reasonable" fees, the Michigan courts have held that the statute's mandatory language requires courts to award "actual" fees. *See Speicher v. Columbia Twp. Bd. of Election Comm'rs*, 832 N.W.2d 392, 395 (Mich. Ct. App. 2012) (per curiam) (interpreting a similar provision); *Booth Newspapers, Inc. v. Wyoming City Council*, 425 N.W.2d 695, 701–02 (Mich. Ct. App. 1988) (same). These courts have recognized that a lawyer's "actual" fees are those that "exist[] in . . . fact or reality." *Omdahl v. West Iron Cnty. Bd. of Educ.*, 733 N.W.2d 380, 382 (Mich. 2007) (citation omitted).

Yet the Michigan courts have also imposed two limits on the recoverable fees. They have held (at least for a nearby provision) that a plaintiff may not recover attorney's fees for "matters

5

unrelated to" the Open Meetings Act claim when the plaintiff's suit pursued other claims. *See Speicher*, 832 N.W.2d at 399 (interpreting Mich. Comp. Laws § 15.271(4)). They have also held that the ban on charging an "illegal or clearly excessive fee" in the Michigan Rules of Professional Conduct restricts the amount that lawyers may recover under these fee-shifting statutes. Mich. R. of Prof'l Cond. 1.5(a); *see Zoran v. Township of Cottrellville*, 913 N.W.2d 359, 362 (Mich. Ct. App. 2017) (per curiam); *Speicher*, 832 N.W.2d at 395–96. Gibbard does not dispute on appeal that these two substantive limits applied to her request for attorney's fees.

Given that Gibbard's right to fees arises from Michigan law, how should we choose our standard of review for the district court's award? Does this appellate standard also qualify as "substantive" under *Erie*, in which case we would look to the standards that Michigan appellate courts use to review attorney's fees awards? Or does it qualify as "procedural," in which case we would apply our own federal standards? As we have previously suggested, it is likely procedural (and so a question of federal law). *See Auto. Support Grp., LLC v. Hightower*, 503 F. App'x 411, 421 n.5 (6th Cir. 2012); *cf. Mayer*, 29 F.3d at 334. Yet we need not conclusively decide this *Erie* question here because the parties agree on our standard of review. They both note that we should review the district court's ultimate attorney's fees award for an abuse of discretion and any underlying factual findings for clear error. (These same standards apply under both federal and state law anyway. *Compare Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702–03 (6th Cir. 2016), *with Speicher*, 832 N.W.2d at 397.)

### B

Keller and Schuette raise two arguments under these principles. They argue that the district court committed clear error when finding that all of the attorney hours included within Gibbard's renewed request for attorney's fees related to Gibbard's successful Open Meetings Act claims.

They also argue that the court abused its discretion because its attorney's fees award was clearly excessive in light of Gibbard's limited success in this suit.

1

Keller and Schuette claim that some of the legal work in Gibbard's renewed request for attorney's fees was not compensable under the Open Meetings Act. They do not dispute the district court's legal conclusion that legal work is compensable as long as it is "related to" the claims under that Act. *Cf. Fox v. Vice*, 563 U.S. 826, 836, 839 (2011) (adopting causation test under federal law). Instead, they argue that Gibbard's renewed request for attorney's fees included legal work that was unrelated to her Open Meetings Act claims. Yet their appellate brief's two-page argument on this pure fact question falls well short of establishing a clear error.

The district court reasoned that "all of the issues derived from, and interrelated with, a common core of facts" about the confrontation after the October 18 board meeting. Op., R.121, PageID#2921. It thus found that the time that Gibbard requested in her renewed motion was compensable because she "established how all time recorded relative to her modified fee request is related in some respect to the [Open Meetings Act] claim, even if [it] also related to non-[Open Meetings Act] claims." *Id.*, PageID#2923.

We review this factual finding for clear error. That standard of review requires us to give "deference" to the district court. *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017). As long as its finding is "plausible" when reviewed against the whole record, we have no grounds to disturb it. *Degussa*, 277 F. App'x at 536 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)). The appellant, moreover, bears the burden of proving that the district court's finding lacked an adequate evidentiary basis. *See Franklin v. Aycock*, 795 F.2d 1253, 1258 (6th Cir. 1986).

Keller and Schuette have utterly failed to satisfy this burden on appeal. To begin with, they tell us almost nothing about the requested attorney's fees. They do not identify the number of hours that the court awarded. They do not identify the attorneys involved. And they do not identify any work performed by these attorneys. Indeed, Keller and Schuette do not list any specific billing entry—not one—that they claim was for work "unrelated to" Gibbard's Open Meetings Act claims. *Speicher*, 832 N.W.2d at 399. They simply state what is, in essence, a legal conclusion (that the award includes unrelated work) without offering any factual support.

Keller and Schuette also do not tell us anything about the factual or legal bases for the Open Meetings Act claims as compared to the other legal claims. They leave us in the dark about what the Open Meetings Act requires or what specific conduct violated it. Consider one example. The district court's summary-judgment opinion suggested that Schuette's Open Meetings Act violation occurred at later meetings when he videotaped Gibbard and cut her off during a public comment. Op., R.45, PageID#394–95. Perhaps Schuette could have shown how the factual development of, and legal research for, this claim had nothing to do with the other claims. But "'[j]udges are not like pigs, hunting for truffles' that might be buried in the record"; it was Schuette's job on appeal to identify the attorney hours that were unrelated to the Open Meetings Act claim against him and the factual basis for that argument. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1163 (6th Cir. 2021) (citation omitted). He (and Keller) failed to do so.

The district court, moreover, did everything that it could to allow Keller and Schuette to develop evidence showing that Gibbard's attorneys sought payment for unrelated work. *Cf. Speicher*, 832 N.W.2d at 400. When Keller and Schuette raised a general objection, it permitted them to file a supplemental brief objecting with specificity. It also made clear that it would hold an evidentiary hearing during which they could poke holes in Gibbard's assertion that her

requested fees all related to the Open Meetings Act claims. But their supplemental brief merely listed conclusory objections to every billing entry. And they waived the fact-gathering hearing.

In response, Keller and Schuette accurately point out that Gibbard bore the burden of proof to establish her entitlement to the requested attorney's fees. *See Speicher*, 832 N.W.2d at 400. But that burden of proof applied in the district court. We do not sit as a second trier of fact. The burden switched to Keller and Schuette on appeal to prove that the district court's factual findings were clearly erroneous. *See Franklin*, 795 F.2d at 1258. Their conclusory argument that the award "must" have included work for unrelated issues does not suffice to meet this burden of proof given their complete failure to identify specific factual support for it.

2

Even if the requested attorney's fees were for work compensable under the Open Meetings Act, Keller and Schuette next argue that the district court's ultimate award was still "clearly excessive." Yet the district court did not abuse its discretion with this award.

Michigan Rule of Professional Conduct 1.5(a) indicates that "[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." The rule identifies eight factors for courts to consider to decide on the "reasonableness of a fee." *Id.* These factors include "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," "the fee customarily charged in the locality for similar legal services," "the amount involved and the results obtained," "the nature and length of the professional relationship with the client," "the experience, reputation, and ability of the lawyer or lawyers performing the services," and "whether the fee is fixed or contingent." *Id.* The Michigan

courts have described Rule 1.5(a) as establishing a "high standard" that "is essentially an articulation of the clear-and-convincing-evidence burden of proof[.]" *Zoran*, 913 N.W.2d at 363.

Keller and Schuette ignore most of these factors when arguing that the attorney's fees award was clearly excessive. They do not dispute that Gibbard's attorneys charged a reasonable hourly rate commensurate with the rates in their locality. Nor do they challenge the attorneys' skill or experience. And apart from their (rejected) factual argument that the attorneys billed for work unrelated to the Open Meetings Act, they do not argue that the attorneys' time entries for individual tasks were excessive. They do not, for example, suggest that the lawyers spent too many hours preparing for specific depositions or conducting particular legal research. *Cf. Ne. Ohio Coal. for the Homeless*, 831 F.3d at 703–14. They also do not dispute that Gibbard's attorneys spent over two years extensively litigating this case. As the district court recognized, this case included "discovery, dispositive motions, motions in limine, a full jury trial, and post-judgment motions[.]" Op., R.109, PageID#2747. Most of the relevant Rule 1.5(a) factors thus fully supported the district court's award.

Keller and Schuette respond with one—and only one—factor: "the amount involved and the results obtained" in the suit. Mich. R. of Prof'l Cond. 1.5(a)(4). They argue that the fee award was excessive because it dwarfed Gibbard's monetary recovery and because Gibbard and Cook lost some other claims, including their federal claims under § 1983. We see two problems with this argument.

Problem One: Although the jury awarded Gibbard just $250 for each of her claims, the Open Meetings Act allows a plaintiff to recover only "damages of not more than $500.00 total" per claim. Mich. Comp. Laws § 15.273(1). Because the Act strictly limits the recovery in this way, it makes little sense to interpret Rule 1.5(a) as prohibiting attorney's fees that are significantly

larger than the "amount involved" or "results obtained." Those amounts and results will always be small. At the same time, the Act notes that an official "shall" be liable for $500 plus the "actual" attorney's fees incurred to win the suit. *Id.* The "actual" fees will often substantially exceed $500. Indeed, the Michigan legislature adopted the Act's various causes of action because prior laws had lacked an adequate "enforcement mechanism" to ensure that government officials were following the Act's substantive standards. *See Omdahl*, 733 N.W.2d at 383. Yet it would all but gut this particular "enforcement mechanism" if attorney's fees were strictly proportional to the $500 cap.

Problem Two: Keller and Schuette rely primarily on federal cases interpreting 42 U.S.C. § 1988, which allows a court "in its discretion" to grant "reasonable" attorney's fees to a "prevailing party" in a civil-rights suit. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 114–16 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 433–40 (1983). When deciding what qualifies as "reasonable" fees, the Supreme Court made clear that courts should initially consider the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Yet the Court also recognized that plaintiffs asserting § 1983 claims can obtain a range of results. They will often pursue many different claims, all of which, if successful, would be compensable under § 1988. *See id.* at 434–35. They will also often seek many different types of relief, including injunctive relief and damages awards ranging from nominal damages to millions of dollars. *See Farrar*, 506 U.S. at 114. So the results obtained in the § 1983 suit also affect the "reasonableness" of the fee award. *See id.* at 114–16; *Hensley*, 461 U.S. at 434–37.

This framework does not neatly translate over to Gibbard's claims under the Open Meetings Act in this case. To begin with, Keller and Schuette fail to explain why caselaw interpreting a statute *permitting* a court to grant *reasonable* fees is relevant to a statute *mandating* that the court grant *actual* fees. *Cf. Dep't of Nat. Res. & Env't v. Rexair, Inc.*, 2013 WL 6182641,

at *2–4 (Mich. Ct. App. Nov. 26, 2013) (per curiam). Courts have less discretion to limit attorney's fees under this state law than they do under § 1988. *See Booth*, 425 N.W.2d at 701–02. Section 1983, moreover, does not limit damages the way the Open Meetings Act does. A $250 recovery by a § 1983 plaintiff seeking millions of dollars may look like "nominal damages," but the same recovery by an Open Meetings Act plaintiff does not. *See Farrar*, 506 U.S. at 114–16.

In addition, a § 1983 plaintiff may seek to recover for many different constitutional claims (all of which are compensable under § 1988) but prevail on only one. The "results obtained" in that case may seem quite unimpressive. *See Hensley*, 461 U.S. at 434–35. Here, by contrast, Gibbard fully prevailed on the Open Meetings Act claims brought against Keller and Schuette. To be sure, she also lost (and won) other federal and state claims under § 1983 and state common law. But the Open Meetings Act did not permit her to obtain attorney's fees on these claims anyway. Win or lose, she was entitled to zero under the Act. That is why the district court needed to make the factual finding that all of her attorneys' work related to the Open Meetings Act claims. Once it made that finding, however, her losses (or wins) on the other claims should not affect her entitlement to fees under the Act. The "results obtained" instead should focus on her success on the compensable claims. And she was quite successful when judged from this vantage point. All told, we see no abuse of discretion in the district court's conclusion that the Rule 1.5(a) factors supported its attorney's fees award.

One last point. The Open Meetings Act made Keller and Schuette each "personally liable" for the attorney's fees that were required to prove their *individual* violations. Mich. Comp. Laws § 15.273(1). The district court, however, appeared to indicate that all "Defendants" were liable for a lump sum. Op., R.121, PageID#2926. Yet the township defendants do not argue that the fee

award should have been limited to Keller and Schuette or split up for the attorneys' specific work on the specific claims against each person. We thus need not consider that issue.

We affirm.